# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BARBARA LYNN CASTILLO,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 17-CV-4072-LTS<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Barbara Lynn Castillo seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Castillo argues that the administrative law judge (ALJ), Chris Stuber, erred in assessing Castillo's subjective complaints and weighing medical opinions and that the ALJ's residual functional capacity (RFC) determination is not supported by some medical evidence or substantial evidence in the record as a whole. Castillo argues overwhelming evidence supports a finding that she is disabled and asks for remand for payment of benefits. I recommend **affirming** the ALJ's decision.

## I. BACKGROUND[1]

Castillo filed an application for SSI benefits based on bipolar disorder and "occasional back problems," and later raised additional impairments of depression, anxiety, arthritis in her spine, and asthma. AR 28, 54-55. The applicable onset date is July 14, 2014. AR 30-31. Castillo last worked steadily in 1997, followed by some odd jobs, but has no past relevant work for purposes of her application. AR 31-32. Castillo's

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 12).

application was denied initially in November 2014, and on reconsideration in February 2015. AR 54, 71. The record contains no opinion from a treating source regarding Castillo's mental or physical RFC. The initial review included RFC opinions from consultative examiners Jessica Luitjohan, PsyD (AR 311-14), and Physical Therapist Brian Owens (Therapist Owens) from St. Luke's Rehabilitation (AR 303-10), as well as state agency consultants Donald Shumate, DO, and Russell Lark, PhD. AR 56, 63-67. The reconsideration review also included RFC opinions from state agency consultants Jan Hunter, DO, and Myrna Tashner, EdD. AR 78-83.

The ALJ conducted an administrative hearing on December 22, 2016, with Castillo and a vocational expert both appearing and testifying by video. AR 24-26. On February 23, 2017, the ALJ issued a written opinion, following the familiar five-step process outlined in the regulations[2] for determining whether Castillo was disabled. AR 12-20. The ALJ found that Castillo suffers from severe impairments of thoracic spondylosis, degenerative disc disease of the lumbar spine, degenerative joint disease of the right hip, asthma, bipolar disorder, and major depressive disorder, but that none of these impairments meet or equal applicable listings. AR 14-16. The ALJ then determined Castillo's RFC, finding:

> [Castillo] is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently. She can stand and/or walk about 6 hours in an 8-hour workday (with normal breaks) and can sit for about 6 hours (with normal breaks). She should avoid concentrated exposure to extreme heat. She is limited to performing simple, routine, and repetitive tasks and can have only occasional interaction with the public and coworkers.

---

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 416.920(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

AR 16. In evaluating Castillo's RFC, the ALJ considered Castillo's testimony from the administrative hearing, medical treatment records, and objective medical evaluation results. AR 16-19. The ALJ found Castillo's testimony was inconsistent with the medical and other evidence in the record. AR 16-19. The ALJ also considered the opinions from the consultative examiners and state agency consultants, Global Assessment of Functioning (GAF) scores, and a third-party function report from Castillo's boyfriend. AR 18-19. The ALJ concluded that although Castillo has no past relevant work, she could perform work as a kitchen helper, industrial cleaner, and hand packager (each medium, unskilled occupations), and that she was therefore not disabled. AR 19-20.

The Appeals Council denied Castillo's request for review on October 24, 2017 (AR 1), making the ALJ's opinion the final decision of the Commissioner. *See* **20 C.F.R. § 404.981**. Castillo filed a timely complaint in this court (Doc. 3) on December 14, 2017. *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 13, 14, 15), and the Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). "If substantial evidence supports the Commissioner's conclusions, [the reviewing] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Nash v. Comm'r Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018) (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)).

Accordingly, the court must affirm the ALJ's decision if, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Castillo argues that the ALJ erred in assessing Castillo's subjective statements and in weighing medical opinions from the consultative examiners and that the ALJ's RFC determination is not supported by some medical evidence or substantial evidence in the record as a whole. Castillo thus asserts the ALJ's decision should be overturned and the matter remanded for an award of payment because the evidence overwhelmingly supports a finding that Castillo is disabled. I will address each of these arguments in turn.

### A. *Subjective Complaints*

When evaluating the credibility of a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *accord Polaski*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir. 1986).[3] "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black*, 143 F.3d at 386. "'Credibility determinations are the province of the ALJ' [and a reviewing] court defers to the ALJ's determinations 'as long as good reasons and substantial evidence support the ALJ's evaluation'" of a claimant's subjective complaints. *Nash*, 907 F.3d at 1090 (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086

---

[3] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. *Jones v. Callahan*, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

4

(8th Cir. 2016)). The court "will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." *Id.* (quoting *Travis*, 477 F.3d at 1040). Courts must defer to an ALJ's assessment when the ALJ "explicitly discredits a claimant's testimony and gives good reasons for doing so." *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

Castillo argues the ALJ erred in discounting her subjective statements based on her ability to engage in activities of daily living. Specifically, Castillo argues that the ALJ exaggerated her activities of daily living and that the record supports a finding that she cannot perform full-time work. Castillo testified that she experiences pain in her hips that runs to her feet and causes numbness, that "[her] back hurts really bad at certain times," and that she has mild arthritis in her back. AR 32. She explained her "minor" arthritic lower-back pain is not constant, but rather "comes and goes." AR 171. She experiences pain when she stands too long (such as doing dishes), carries things (at times when doing laundry), and if she sits for too long. AR 33-34, 171. Also, walking causes pain, mainly in her hips and sometimes in her back. AR 34, 171. She estimated that she can sit for an hour to an hour and a half before she must stand up and walk around a bit and that she can walk a mile slowly without stopping. AR 34. Regarding mental functioning, Castillo testified she cannot handle when people get really close to her. AR 32. She becomes very anxious and "panicky" when she has "to go somewhere or somebody's going to see [her]." AR 36. She "sometimes" has issues being around other people (AR 37), and she becomes angry and yells and screams (AR 36, 39).

The ALJ concluded[4] Castillo's allegations about the limiting effects of her impairments are "inconsistent with many of the activities in which she engages." AR

---

[4] Castillo argues the ALJ contradicted himself by finding Castillo's activities of daily living do not necessarily show she can perform full-time work (AR 17), but determining she had the RFC to perform full-time work. *See* Doc. 13 at 12. This argument is nonsensical. It appears the ALJ was merely recognizing that Castillo's activities of daily living, standing on their own, do not demonstrate that she can perform full-time work. It is clear from the ALJ's opinion that he

5

17. The ALJ specifically noted Castillo's ability to prepare meals, mow the lawn with a push mower, play with her grandchildren, attend school activities, shop, help her boyfriend with "strenuous things," perform household chores, and walk up and down the stairs several times per day.[5] AR 17. The ALJ could properly find that these activities of daily living undermine Castillo's reported limitations. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking[] are inconsistent with subjective complaints of disabling pain."). This reason was supported by substantial evidence in the record, especially considering the deferential standard of review. *See* AR 30, 40-41, 186 (watches and plays with her grandchildren (ages four, six, seven, and nine at the time of the administrative hearing), including getting on the floor to play); AR 33, 40, 173, 176, 184 (does dishes and cleans); AR 40, 176, 184 (cooks meals); AR 40, 47, 176 (does laundry without pain and hangs clothes on the line outside); AR 45-46, 173 (goes up and down stairs several times a day); 34, 186 (able to walk one mile at a time slowly); AR 173, 183 (walks to get the newspaper and up and down a hill to check the mail); AR 48, 175, 183 (feeds the dog and helps empty the cat litter); AR 47, 176 (helps mow the lawn with a push mower); AR 48, 183 (performs personal care); AR 37 (sometimes has issues being around others); AR 43 (attends her grandchildren's school events, such as concerts); AR 43, 177, 185 (can go to the store, although she hates doing so because of her anxiety); AR 186 (attends church and performs volunteer work); *see also* AR 312

---

fully considered the entire record (not just Castillo's activities of daily living), in determining Castillo's RFC.

[5] I agree with Castillo that the record indicates her boyfriend reported she helps him because he is not able to do strenuous activities, and not that Castillo necessarily engages in strenuous activities herself. *See* AR 175. This would not affect the ALJ's conclusion, however, because the ALJ cited numerous other activities of daily living that provide substantial support for the ALJ's conclusion.

(can care for personal hygiene, cook, and perform household chores without problem, and is able to go shopping although she prefers to stay home).[6]

Castillo does not address the additional reasons the ALJ provided for not fully crediting Castillo's subjective complaints. In particular, the ALJ found Castillo's reports were inconsistent with: (1) the frequency and nature of treatment she sought for her physical impairments; (2) the conservative nature of her mental-health treatment and her contradictory reports of symptoms to treatment providers; and (3) the objective medical evidence (including medical imaging, mental status examinations, and GAF scores[7]). *See* AR 17-18. Each one of these was a good reason for the ALJ to not fully credit Castillo's subjective complaints. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (ALJ may rely on "relatively conservative treatment history" and failure to seek treatment for long periods of time in deciding to not fully credit a claimant's subjective complaints); *McCoy*, 648 F.3d at 614 ("ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole") (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)); *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002) (ALJ may reject a claimant's subjective complaints based on "objective medical evidence to the contrary"); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (ALJ may discredit

---

[6] Castillo testified she quit going to church because she felt she was being judged by others and because it hurt her back. AR 42-43. The first reason is not necessarily a result of her anxiety, and the second reason relates to her physical impairments. Similarly, her testimony about not going to the store appeared to involve physical issues (it takes her a long time and her daughter prefers she ride on a scooter, which she prefers not to). AR 43. Overall, this testimony does not support greater mental limitations than are included in the ALJ's RFC determination.

[7] Although GAF scores standing alone may not be sufficient reason to discount other evidence in the record, an ALJ may consider a claimant's overall GAF-score history in assessing other evidence. *Cf. Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010) (finding consistent GAF scores between 52 and 60, indicating "moderate symptoms or moderate difficulty with social or occupational functioning," was appropriate factor to consider in weighing medical opinion evidence); *see also Johnson v. Astrue*, No. 4:07CV01584, 2009 WL 604905, at *19 (E.D. Mo. 2009) (noting ALJ's consideration of claimant repeatedly being assigned GAF score at the top of the moderate range in upholding ALJ's discounting claimant's subjective complaints).

a claimant's subjective complaints when the claimant makes inconsistent statements about symptoms).

The ALJ gave multiple, good reasons for his determination that Castillo's statements about her impairments and their limiting effects were not consistent with other evidence. Accordingly, the ALJ did not err in assessing Castillo's subjective complaints.

### B. *Medical Opinions*

When determining a claimant's RFC, the ALJ considers medical opinions "together with the rest of the relevant evidence." **20 C.F.R. § 416.927(b) (2018)**.[8] The ALJ considers the following factors to determine the weight to assign a medical opinion:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting the current **20 C.F.R. §§ 404.1527(c), 416.927(c)**). The ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)).

---

[8] The Social Security Administration adopted new regulations for evaluating medical opinions that went into effect on March 27, 2017. *See* **Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844** (Jan. 18, 2017). Rather than stating that these rules are not retroactive (its usual practice), the Social Security Administration issued two sets of new regulations: one governing claims filed on or after March 27, 2017, and one governing claims filed before that date, which are substantively the same as the old rules. *See, e.g.*, **20 C.F.R. §§ 416.927, 416.920c**. The Eighth Circuit has cited to both the old rules, *see Gates v. Comm'r, Soc. Sec. Admin.*, 721 F. App'x 575, 576 n.2 (8th Cir. 2018) (per curiam), and the new rules, *see Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). As it makes no substantive difference, for ease, rather than citing to both sets of rules, I cite only to the new regulations contained in the 2018 Code of Federal Regulations.

Castillo argues the ALJ erred in weighing the consultative opinions of Dr. Luitjohan and Therapist Owens. Dr. Luitjohan concluded that "in a typical public situation, [Castillo] is likely to become anxious and withdraw from others or become defensive and verbally aggressive." AR 313. Dr. Luitjohan also opined that Castillo shows "some deficits in memory" (although no issues with comprehension); experiences some issues with attention, concentration, and pace when she is anxious; may have trouble adjusting to change and using good judgment; but has no barriers to handling cash. AR 313. Castillo argues the ALJ erred in weighing Dr. Luitjohan's opinion and by not including greater limitations in the ALJ's RFC determination based on Dr. Luitjohan's opinion.

The ALJ discounted Dr. Luitjohan's limitation on public interaction, finding it was necessarily based on Castillo's subjective complaints because Dr. Luitjohan "had no first-hand knowledge of [Castillo's] social abilities beyond [the] limited setting" of the single, clinical interview. AR 18. This was a proper reason for not accepting this portion of Dr. Luitjohan's opinion. *See **Vance v. Berryhill***, 860 F.3d 1114, 1121 (8th Cir. 2017) ("Because the ALJ reasonably concluded that [claimant's] statements lacked credibility, he could discount [the treating source's] opinion to the extent that it relied on [claimant's] subjective complaints."). The ALJ found Dr. Luitjohan's other opinions were "generally consistent" with Castillo's other mental status examinations. AR 18. Overall, the ALJ gave Dr. Luitjohan's opinion "some weight." *Id*. As discussed further below, the ALJ incorporated appropriate mental limitations in determining Castillo's RFC, which were supported (at least in part) with Dr. Luitjohan's opinion. The ALJ thus gave a good reason for the weight given to Dr. Luitjohan's opinion.

Although not clear from the briefing, it appears Castillo also asserts the ALJ erred in giving only limited weight to Therapist Owens's opinion on the basis he was not an acceptable medical source (arguing the Commissioner cannot reject the opinion for that reason because the Commissioner chose a physical therapist (rather than a physician) to conduct the consultative examination). Even if the consultative examination had been

9

conducted by a physician (as opposed to a physical therapist), it would not alter the ALJ's finding. Opinions from treating sources are generally entitled to controlling weight. *See Owen*, 551 F.3d at 798 (opinions of treating sources entitled to greater weight than opinions from non-treating sources); **20 C.F.R. § 416.927(c)**. In contrast, opinions formed after a one-time consultative examination are not entitled to any "special weight." *Perrymore v. Colvin*, 607 F. App'x 614, 615 (8th Cir. 2015) (per curiam) (citing *Kirby*, 500 F.3d at 709). "[T]he ALJ has more discretion and is permitted to consider any inconsistencies found within the record" in weighing these types of opinions. *Baker v. Colvin*, 620 F. App'x 550, 556 (8th Cir. 2015) (quoting *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005)).

Aside from noting Therapist Owens was not an acceptable medical source, the ALJ found Therapist Owens' opinion was inconsistent with more recent physical examinations, as well as Castillo's activities of daily living. AR 19. Each of these are a good reason for giving limited weight to the opinion and are supported by the record. *See Milam*, 794 F.3d at 984 (ALJ may give less weight to medical opinion that is inconsistent with claimant's activities of daily living); *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006) (same); *Owen*, 551 F.3d at 799 (medical opinion may be given less weight if inconsistent with other medical evidence in the record); *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004) (same); AR 30, 33, 40-41, 43, 45-48, 173, 175-77, 183-85, 312 (activities of daily living); AR 416-23 (medical imaging); AR 259, 431, 436, 447, 460 (physical examinations); *see also* AR 269, 272, 279, 286, 317, 320, 323, 326, 329, 335, 338, 344, 347, 358, 364, 373, 384, 396 (limited physical examinations during mental health treatment showing normal gait, muscle tone and strength, and movement). The ALJ also noted (earlier in his opinion) that Therapist Owens found "few abnormalities" during his physical examination of Castillo. AR 18 (only finding "tenderness to palpation and slight limitation in range of motion," while other records consistently showed normal gait, strength, muscle tone, and sensation); *see*

*also* 303-04 (Therapist Owens's physical examination notes). An ALJ may discount opinions of a consultative examiner that are not supported by the physical examination record because "[a]n absence of clinical findings supports the rejection of [an examiner's] opinion as to physical limitations." *Boyd v. Colvin*, 831 F.3d 1015, 1020-21 (8th Cir. 2016) (examiner found reduced range of motion and tenderness, but no issues with gait, muscle strength, or grip strength).

Overall, the ALJ provided good reasons for the weight given to opinions from the consultative examiners. Even if the evidence could have been weighed differently, under the deferential standard of review, this court does not reweigh the evidence presented to the ALJ. *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).

### C. *Some Medical Evidence*

When determining a claimant's RFC, the ALJ must consider "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). Castillo argues the ALJ's RFC determination is not supported by some medical evidence because the ALJ discounted the opinions of Dr. Luitjohan and Therapist Owens and relied on the reviewing opinions of the state agency consultants (Drs. Shumate, Lark, Hunter, and Tashner).

The ALJ determined Castillo has the physical RFC[9] "to lift and/or carry 50 pounds occasionally and 25 pounds frequently," and stand, walk, or sit about six hours in an

---

[9] The ALJ also included a limitation of avoiding concentrated exposure to extreme heat (AR 16), which appears to address Castillo's report that her asthma, which is controlled with an inhaler, is worse on hot days (AR 35). Castillo does not raise concerns with this portion of the ALJ's RFC determination.

eight-hour work day with normal breaks.  AR 16.  This RFC determination is supported by the opinions of Dr. Shumate (AR 64) and Dr. Hunter (AR 79-80).  The ALJ limited Castillo's mental RFC "to performing simple, routine, and repetitive tasks and . . . only occasional interaction with the public and coworkers."  AR 16.  This determination is supported, at least partially, by Dr. Luitjohan's opinion (which found "some" issues with Castillo's ability to maintain attention/concentration and pace, and that she would "likely become anxious and withdraw[n,] . . . defensive and verbally aggressive" in "a typical public situation" (AR 313)).  In addition, it is supported by the opinions of Dr. Lark (AR 65-67) and Dr. Tashner (AR 80-82).  In addition to weighing the medical opinions, the ALJ also considered the nature of Castillo's overall treatment history (both mental and physical), the objective medical evidence (medical imaging, physical examinations, and mental status examinations), Castillo's subjective complaints, and her activities of daily living.  *See* AR 17-19.  As discussed above, the ALJ provided good reasons for the weight given to the consultative examiners' opinions, and could thus rely on the opinions of the state agency consultants.

An independent review of the evidence, combined with the supporting state agency RFC opinions, may constitute some medical evidence for an ALJ's RFC determination. *See Kamann v. Colvin*, 721 F.3d 945, 949-51 (8th Cir. 2013) (rejecting claimant's argument that the ALJ "formulate[d] his own medical opinion" when the ALJ "thoroughly reviewed years of medical evidence on record and issued [an RFC determination] consistent with the views of . . . the reviewing agency psychologist"); *see also Hensley*, 829 F.3d at 932 (finding substantial evidence supported RFC determination when based on summary letter from claimant's primary care provider at Veteran's Affairs and "extensive VA treatment notes"); *Dickson v. Berryhill*, No. 16-CV-00267-NCC, 2017 WL 1152038, at *7-9 (E.D. Mo. Mar. 28, 2017) (holding that some medical evidence supported the ALJ's RFC determination even though the ALJ gave no more than some weight to all the medical opinions); *Fleming v. Colvin*, No. 14-CV-03109-MEF, 2016 WL 483035, at *8 (W.D. Ark. Feb. 8, 2016) (upholding a RFC

12

Case 5:17-cv-04072-LTS-KEM     Document 18     Filed 12/12/18     Page 12 of 13

determination based on non-examining consultant and review of the entire record, where the ALJ gave good reasons for discounting the treating source). Thus, the ALJ's RFC determination is supported by some medical evidence.

### III. CONCLUSION

I respectfully recommend that the decision of the Social Security Administration be **affirmed** and that judgment be entered in favor of the Commissioner.

Objections to this Report and Recommendation must be filed **within fourteen days** of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. **Fed. R. Civ. P. 72.** Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 12th day of December, 2018.

*Kelly K.E. Mahoney*
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa