# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BARBARA LYNN CASTILLO,<br><br>Plaintiff,<br>vs.<br>NANCY A. BERRYHILL, Deputy<br>Commissioner of Operations, [1]<br><br>Defendant. | No. C17-4072<br><br>**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I.    INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge. Doc. No. 18. Judge Mahoney recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Barbara Lynn Castillo's application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et. seq. (Act). Castillo filed a timely objection on December 26, 2018. Doc. No. 19. The Commissioner has not responded and the deadline for a response has expired.

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations. For simplicity, I will continue to refer to the defendant as "the Commissioner" throughout this order.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citation omitted).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citation omitted), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citation omitted). Instead, if, after reviewing the evidence, the court "find[s]

it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (citation omitted). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.     *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although

there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Castillo applied for SSI on July 31, 2014, alleging an onset date of July 14, 2014, due to bipolar disorder, back problems, depression, anxiety, arthritis in her spine and asthma.[2] AR 12, 28. After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found there were jobs in significant numbers in the national economy that Castillo could perform based on her residual functional capacity (RFC) and, therefore, she was not disabled as defined in the Act. AR 19–20. Castillo argues the ALJ erred in determining that she was not disabled because:

1. The ALJ failed to properly assess Castillo's subjective complaints.

2. The ALJ failed to properly weigh the medical opinions of Dr. Jessica Luitjohan and Physical Therapist Brian Owens.

3. The ALJ's RFC is not supported by medical evidence or substantial evidence in the record as a whole.

*See* Doc. No. 13 at 4. Judge Mahoney addressed each argument in her R&R.

---

[2] Castillo originally filed for SSI benefits due only to bipolar disorder and back problems. She later raised the additional impairments.

First, Judge Mahoney found that the ALJ could properly find Castillo's reported activities of daily living undermined her subjective complaints. Doc. No. 18 at 5–6. She noted Castillo experienced pain in her hips and back that "is not constant, but rather 'comes and goes'" and experiences pain if she sits or walks too long. *Id.* at 5. Judge Mahoney also noted that Castillo prepared meals, mowed the lawn, played with her grandchildren, attended school activities, shopped, performed household chores and helped her boyfriend with activities. *Id.* at 6. Judge Mahoney also highlighted other reasons the ALJ did not fully credit Castillo's complaints, such as the frequency and nature of treatments, "the conservative nature" of her mental-health treatments, Castillo's contradictory reports to her treatment providers and objective medical evidence. *Id.* at 7. Judge Mahoney found "[t]he ALJ gave multiple, good reasons for his determination that Castillo's statements about her impairments and their limiting effects were not consistent with other evidence. Accordingly, the ALJ did not err in assessing Castillo's subjective complaints." *Id.* at 8.

Judge Mahoney next addressed the ALJ's assessment of medical opinions provided by Dr. Luitjohan and physical therapist Owens. First, Judge Mahoney stated that the ALJ discounted Dr. Luitjohan's limitation on public interaction because it was based on Castillo's subjective complaints and Dr. Luitjohan had no first-hand knowledge of Castillo's abilities beyond a single clinical interview. *Id.* at 9. Judge Mahoney found this was a "proper reason for not accepting this portion of Dr. Luitjohan's opinion." *Id.* Additionally, Judge Mahoney stated:

> The ALJ found Dr. Luitjohan's other opinions were "generally consistent" with Castillo's other mental status examinations. AR 18. Overall, the ALJ gave Dr. Luitjohan's opinion "some weight." *Id.* As discussed further below, the ALJ incorporated appropriate mental limitations in determining Castillo's RFC, which were supported (at least in part) with Dr. Luitjohan's opinion. The ALJ thus gave a good reason for the weight given to Dr. Luitjohan's opinion.

*Id.*

As for physical therapist Owens, the ALJ's reasons for giving limited weight to his opinion were that Owens was not an acceptable medical source and his opinion was inconsistent with physical examinations and Castillo's daily activities. *Id.* at 10. Judge Mahoney found these were good reasons:

> The ALJ also noted (earlier in his opinion) that Therapist Owens found "few abnormalities" during his physical examination of Castillo. AR 18 (only finding "tenderness to palpation and slight limitation in range of motion," while other records consistently showed normal gait, strength, muscle tone, and sensation); *see* (Therapist Owens's physical examination notes). An ALJ may discount opinions of a consultative examiner that are not supported by the physical examination record because "[a]n absence of clinical findings supports the rejection of [an examiner's] opinion as to physical limitations." *Boyd v. Colvin*, 831 F.3d 1015, 1020-21 (8th Cir. 2016) (examiner found reduced range of motion and tenderness, but no issues with gait, muscle strength, or grip strength).
>
> Overall, the ALJ provided good reasons for the weight given to opinions from the consultative examiners. Even if the evidence could have been weighed differently, under the deferential standard of review, this court does not reweigh the evidence presented to the ALJ. *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).

*Id.* at 10–11.

Finally, Judge Mahoney addressed the evidence supporting the ALJ's RFC assessment. She stated:

> The ALJ determined Castillo has the physical RFC "to lift and/or carry 50 pounds occasionally and 25 pounds frequently," and stand, walk, or sit about six hours in an eight-hour work day with normal breaks. AR 16. This RFC determination is supported by the opinions of Dr. Shumate (AR 64) and Dr. Hunter (AR 79-80). The ALJ limited Castillo's mental RFC "to performing simple, routine, and repetitive tasks and . . . only occasional interaction with the public and coworkers." AR 16. This determination is supported, at least partially, by Dr. Luitjohan's opinion (which found "some" issues with Castillo's ability to maintain attention/concentration and pace, and that she would "likely become anxious and withdraw[n,] . . . defensive and verbally aggressive" in "a typical public situation" (AR 313)). In addition, it is supported by the opinions of Dr. Lark (AR 65-67) and Dr. Tashner (AR 80-82). In addition to weighing the medical opinions,

> the ALJ also considered the nature of Castillo's overall treatment history (both mental and physical), the objective medical evidence (medical imaging, physical examinations, and mental status examinations), Castillo's subjective complaints, and her activities of daily living. *See* AR 17-19. As discussed above, the ALJ provided good reasons for the weight given to the consultative examiners' opinions, and could thus rely on the opinions of the state agency consultants.

*Id.* at 12. Judge Mahoney therefore found that the ALJ's RFC determination is supported by some medical evidence because it was based on an independent review of the evidence and supporting state agency RFC opinions. *Id.* at 12–13.

## IV. ANALYSIS

Castillo asserts the following objections to the R&R: (1) "objective medical evaluations" do not exist in the record to support the RFC; (2) Judge Mahoney applied incorrect rules for evaluating medical opinions; (3) Judge Mahoney improperly relied on Global Assessment of Functioning (GAF) scores; (4) either Owens' opinion should have been given more weight or the ALJ should have ordered another consultative examination (CE); (5) substantial medical evidence does not support the ALJ's physical RFC and (6) her daily activities do not support the ALJ's physical RFC. Doc. No. 19 at 1–5. I will address each objection separately.

### A. *Objective medical evaluation results*

Castillo argues that the record does not contain any objective medical evaluation results and that neither Judge Mahoney nor the ALJ identified any such evidence. Doc. No. 19 at 1. Judge Mahoney stated in her R&R, "[i]n evaluating Castillo's RFC, the ALJ considered . . . objective medical evaluation results." Doc. No. 18 at 3. She gave examples of objective medical evidence such as "medical imaging, mental status

7

examinations, and GAF scores"³ as well as physical examinations. *See* Doc. No. 18 at 7, 12. The ALJ also gave examples of the objective medical evaluation results he considered. *See* AR 18. The record contains evidence from the Siouxland Mental Health Center and the Siouxland Community Health Center, including adult psychiatric "med check" records (AR 265–73, 278–80, 285–87, 292–94, 316–30, 334–40, 343–48, 357–59, 363–65, 372–74, 383–85, 395–97), therapy notes from various providers (AR 274, 276, 281, 283, 288, 290, 341, 349, 351, 355, 360, 361, 366, 368, 370, 375, 377, 386, 388, 393), social history assessments (AR 379–82, 390–92), a psychiatric medical evaluation (AR 398–401), medication check-up records (AR 402, 404, 406, 408, 410, 412, 414), a radiology consultation report (AR 416–18), x-rays and lab reports of the chest and spine/lumbar region (AR 248, 249, 419–23, 424-27), multiple office visit reports (AR 428–62), patient information sheets (AR 245–47, 25–61) and notes of the patient's absences (AR 295–99), in addition to Owens' examination (AR 303–08) and Luitjohn's examination (AR 311–14). Because the record does, in fact, contain objective medical evidence, Castillo's objection on this point is overruled.

B.     *Rules for evaluating medical opinions*

Castillo argues that Judge Mahoney ignored the substantive difference between the "old rules" governing the weight ALJs should give to available medical opinions and the "new rules" that apply to claims filed on or after March 27, 2017. Doc. No. 19 at 1–2. Castillo argues that the new rules "effectively repeal decades of law . . . explaining the importance of treating physicians and explaining the little value of the non-treating and non-examining doctors." *Id.* at 1. Castillo contends that the old rules are applicable to this case and they require that the opinions of non-examining physicians be weighed less

---

³ I recognize the consideration of GAF scores is one of Castillo's objections. I will address that issue below.

than the opinions of those who have treated the patient. *Id*. Castillo contends that Judge Mahoney erred by citing and relying on the new rules. *Id*.

Judge Mahoney quoted Eighth Circuit case law that explained, under the old rules, the factors an ALJ must consider when determining the weight to assign a medical opinion. Doc. No. 18 at 8 (quoting *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008). As for the new rules, Judge Mahoney stated:

> The Social Security Administration adopted new regulations for evaluating medical opinions that went into effect on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Rather than stating that these rules are not retroactive (its usual practice), the Social Security Administration issued two sets of new regulations: one governing claims filed on or after March 27, 2017, and one governing claims filed before that date, which are substantively the same as the old rules. *See, e.g.*, 20 C.F.R. §§ 416.927, 416.920c. The Eighth Circuit has cited to both the old rules, *see Gates v. Comm'r, Soc. Sec. Admin.*, 721 F. App'x 575, 576 n.2 (8th Cir. 2018) (per curiam), and the new rules, *see Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). As it makes no substantive difference, for ease, rather than citing to both sets of rules, I cite only to the new regulations contained in the 2018 Code of Federal Regulations.

*Id*. at 8 n.8.

The regulations governing claims filed on or after March 27, 2017, (i.e., the new rules) require that an ALJ consider the following factors when considering what weight to give medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, which in turn includes factors such as length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship and the existence of an examining relationship; (4) specialization and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c). The new rules also state,

> we will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior

9

administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section.

20 C.F.R. § 416.920c(a).

The regulations governing claims filed before March 27, 2017, the "old rules," require ALJs use the following factors when deciding what weight to give to medical opinions: (1) examining relationship; (2) treatment relationship, which includes factors such as the length of the treatment relationship, the frequency of examination and the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization and (6) "any factors . . . which tend to support or contradict the medical opinion." 20 C.F.R. § 416.927(c).

The old rules also state:

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

20 C.F.R. § 416.927(c).

Because Castillo's claim was filed before March 27, 2017, the old rules apply. Judge Mahoney recognized this in the footnote quoted above. Moreover, she cited to the old rules, as set forth in 20 C.F.R. § 416.927,[4] and to case law applying the old rules, during the course of her analysis. Doc. No. 18 at 9-10. Despite this, Castillo states that "the Magistrate chose to take the easy way and use only the new rules, which are the rules that try to elevate the views of the doctors who never examine or evaluate the

---

[4] Section 416.927, which Judge Mahoney cited, is actually entitled "Evaluating opinion evidence for claims filed before March 27, 2017."

patient." Doc. No. 19 at 1. That statement is both obnoxious and frivolous.[5] Judge Mahoney applied the appropriate rules. Based on my de novo review, I find no error in her application of those rules to the medical opinions of record. Castillo's objection on this point is overruled.

C.   *Global Assessment of Functioning (GAF) scores*

Castillo argues that GAF scores have no direct correlation to the severity requirements of mental disorders. Doc. No. 2 at 19. Therefore, she appears to contend that because both Judge Mahoney and the ALJ referenced the GAF, the finding of "not disabled" was improper. *Id.* In the R&R, Judge Mahoney noted that the ALJ found Castillo's subjective complaints were inconsistent with "(1) the frequency and nature of treatment she sought for her physical impairments; (2) the conservative nature of her mental-health treatment and her contradictory reports of symptoms to treatment providers; and (3) the objective medical evidence (including medical imaging, mental status examinations, and GAF scores)." Doc. No. 18 at 7. The ALJ gave the GAF scores significant weight because they were "well-supported by and consistent with the numerous clinical findings and observations contained in the claimant's medical records." AR 19. Judge Mahoney pointed out in a footnote that "[a]lthough GAF scores standing alone may not be sufficient reason to discount other evidence in the record, an ALJ may consider a claimant's overall GAF-score history in assessing other evidence." Doc. No. 18 at 7 n.7.

Castillo cites *Rayford v. Shinseki*, No. 12-0042, 2013 WL 3153981, at *1 (Vet. App. June 20, 2013) to argue that any consideration of GAF scores is improper. Doc.

---

[5] Plaintiff's objections contain several other flippant and disrespectful statements by counsel, all of which are enhanced by counsel's repeated use of the term "Magistrate" when referring to Judge Mahoney. Since 1990, the position Judge Mahoney holds has had the title of "Magistrate Judge." *See* Judicial Improvements Act of 1990, 104 Stat. 5089 (Dec. 1, 1990). While I will not hold her counsel's behavior against Castillo, I do find it surprising that any attorney would think that such conduct is actually helpful to his or her client.

11

No. 19 at 2. In that case, the court noted that the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders abandoned the use of GAF scores for "'it's conceptual lack of clarity' and 'questionable psychometrics in routine practice.'" *Id.* (quoting Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013)). This court has also noted the same development. *See Hasley v. Colvin*, No. C14-3064-LTS, 2016 WL 1069085, at *9 (N.D. Iowa Mar. 17, 2016). However, even if GAF scores are not "essential to the accuracy of an RFC determination" they are still relevant and should be considered. *Id.* (quoting *Earnheart v. Astrue*, 484 Fed. Appx. 73, 75 (8th Cir. 2012); *see also King v. Colvin*, No. C13-3039-LTS, 2014 WL 1344194, at *12 (N.D. Iowa Apr. 4, 2014).

Here, it is clear that Castillo's GAF scores were just one of many different factors the ALJ considered when determining Castillo's RFC. This was not error. Castillo's objection is overruled.

### D. *Substantial evidence supporting the RFC*

Castillo argues that the ALJ's determination she can lift 50 pounds is not supported by sufficient medical evidence.[6] Doc. No. 19 at 2–3. She contends that progress notes and state agency opinions are not sufficient medical evidence upon which to base an RFC because the ALJ's opinion contradicted the state agency opinions. *Id.* at 3. She also argues that the ALJ could not discount Owens' opinion and still have sufficient evidence to support the RFC because the state doctors determined there was not enough evidence in the record to determine disability without that opinion. *Id.* at 2–3. Instead, Castillo argues that the ALJ should have ordered another consultative examination when Owens'

---

[6] Castillo's 4th, 5th and 6th objections all go to the weight of evidence supporting the RFC. Thus, I will address the merits of those objections in this section. Additionally, these objections focus on the physical limitations of the RFC, not the mental limitations. As such, I will focus on the medical evidence only as it relates to Castillo's physical limitations.

opinion was disregarded. *Id.* Finally, Castillo argues that her daily activities to do not support the RFC limitations. *Id.* at 4.

### 1. *State agency opinions*

Castillo argues that the state agency doctors found her "mostly credible" while the ALJ found her not credible. Doc. No. 19 at 3. However, Russell Lark, Ph.D. stated "the claimant's statements regarding her functional limitations to her *mental* MDI's are mostly credible." AR 67 (emphasis added). Here, Castillo is contesting the physical limitations in her RFC. Additionally, the other state agency doctor, Donald Shumate, D.O., wrote:

> We recognize your conditions cause you pain and may limit your ability to perform work activities that are strenuous in nature. However, there is no evidence of nerve damage or muscle wasting. You are able to stand and walk without assistance. You are able to use your arms and hands without limitations. Records do not indicate that your physical condition would prevent you from doing less strenuous activities.

AR 69. Dr. Shumate found that therapist Owens' opinion that Castillo can only lift 10 pounds and push/pull no more than 25 pounds "is not consistent with the exam finding." AR 64. He stated, "[c]laimant indicates she has minor pain that is not present at the time and has not sought any treatment in almost 3 years. ADLs indicate she is capable of a wide range of activities. These factors erode the credibility of severity of the alleged limitations." AR 64–65. The state agency then issued an RFC indicating Castillo could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday and push and/or pull without limitations. AR 64.

The ALJ found,

[Castillo] is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently. She can stand and/or walk about 6 hours in an 8-hour workday (with normal breaks) and can sit for about 6 hours (with normal breaks). She should avoid concentrated exposure to extreme heat. She is limited to

performing simple, routine, and repetitive tasks and can have only occasional interaction with the public and coworkers.

AR 16. The ALJ also found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record." AR 16–18. Both the ALJ and the state agency doctors adopted the same RFC and indicated that the severity of Castillo's complaints were not entirely credible or consistent with other evidence. Because the ALJ's opinion is not inconsistent with the state agency doctors' opinions, Castillo's objection on this point is overruled.

### 2. *Owens' Opinion*

Next, I will address whether there is some medical evidence on the record with which to support the ALJ's RFC determination, specifically as it relates to discounting Owens' opinion. "Ultimately, a claimant's RFC is an issue reserved for the ALJ." *Brown v. Berryhill*, No. C16-0179-LTs, 2018 WL 1001022, at *13 (N.D. Iowa Feb. 21, 2018). A claimant's RFC is a medical question and must be supported by some medical evidence. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* There may still be sufficient evidence when the ALJ considers the limitations set forth in medical opinions but properly discounted portions of the evidence that went to the extent of the claimant's limitations. *See Brown*, 2018 WL 1001022, at *13; *Williams v. Berryhill*, No. 16-CV-0128-LTS, 2017 WL 3503327, at *8 (N.D. Iowa Aug. 16, 2017). Substantial medical evidence may exist where the ALJ considered the opinion of a consulting physician and conducted an independent review of the medical evidence. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).

In *Kamann v. Colvin*, 721 F.3d 945 (8th Cir. 2013), the Eighth Circuit affirmed the ALJ's RFC finding even though the state agency psychologists concluded there was

insufficient information to diagnose the claimant and gave no weight to the consultative psychologist's opinion. *Id*. at 949-51. The ALJ gave no weight to the consultative psychologist's opinion because it was based on the claimant's self-reports, which were not credible. *Id*. The court noted that it is the claimant's burden to prove disability and provide medical evidence. *Id*. at 950.[7] "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Id*. (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). The Eighth Circuit found there was sufficient evidence to support the RFC when the ALJ thoroughly reviewed the medical evidence and issued a finding consistent with the state agency psychologist's opinion. *Id*. at 951. "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Hensley*, 829 F.3d at 923 (quoting *Johnson v. Astrue*, 6288 F.3d 991, 995 (8th Cir. 2011)). An ALJ has a duty to develop the record and order a consultative examination "when such an evaluation is necessary for him to make an informed decision." *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001) (quoting *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992)).

Castillo argues that because the state agency doctors found there was insufficient evidence to determine an RFC without a consultative examination, there could not be sufficient evidence once the ALJ discounted Owens' opinion. Doc. No. 19 at 3. The state agency initially determined that a consultative examination was required because the

---

[7] Castillo objects to Judge Mahoney's reliance on this case. Doc. No. 19 at 3. She argues that *Kamann* "does not approve of mere progress notes from a doctors [sic] office combined with DDS opinions as being sufficient." *Id*. Judge Mahoney cited *Kamann* for the proposition that "[a]n independent review of the evidence, combined with the supporting state agency RFC opinions, may constitute some medical evidence for an ALJ's RFC determination." Doc. No. 18 at 12. Contrary to Castillo's argument, and as itemized earlier in this opinion, there is more medical evidence available in the record than "mere progress notes." I agree with Judge Mahoney's application of *Kamann*.

15

evidence as a whole was not sufficient to support a decision, Castillo had not been seen for back pain since 2011 and the mental treatment records were created by a therapist and a PA, "neither of which are acceptable medical sources." *Id*. AR 60. A treating source did not perform the consultative examination because there was no treating source available. *Id*.

Owens, the consultative examiner, stated in his opinion that Castillo had poor squatting ability and could not carry more than 10 pounds or push/pull more than 25 pounds. AR 305. In addition to his conclusion, he included range of motion test results, a sensation checklist, a muscle examination and a physical therapy evaluation form. AR 303–08. These showed that Castillo's hand can be fully extended, she has fair grip strength near-normal upper extremity strength (AR 303), she has limited reach, no assistive devices were needed for ambulation, she has normal lower extremity muscle strength (AR 304) and has normal sensation with slow gait pattern. AR 305.

The ALJ gave Owens' opinion limited weight because he is not an acceptable medical source and his limitations were inconsistent with the results of more recent physical examinations and claimant's daily activities. AR 19. Discounting Owens' limitations, or giving his opinion only limited weight, does not mean there is no medical evidence to support the RFC. Owens conducted his examination on September 22, 2014. AR 303. The ALJ's decision was dated February 23, 2017. AR 9. Therefore, the ALJ had access to medical records generated after Owens' examination, including the Radiology Consultation Report (AR 416–18), chest and lumbar examinations (AR 419–20) and multiple office visits dated from October 2014 to November 2016. (AR 428–55).[8] The results of these examinations include "minimal arthritic changes" (AR 416) and "mild degenerative arthritic change." AR 417. Office notes indicated Castillo had

---

[8] The ALJ also had access to records from Siouxland Mental Health Center that were generated between February 2015 and June 2016. *See* AR 334–82. However, as only the physical limitations in the RFC are at issue here I will focus on the records from the Siouxland Community Health Center.

numbness and tingling (AR 430) full range of motion, though her thigh area was tender (AR 431) and normal gait and range of motion with minimal tenderness (AR 436, 440, 448).

I find the medical record was adequately developed due to the available medical records at the time of the ALJ's decision, the objective examination results from Owens and the state agency doctors' opinions. *See Robertson v. Berryhill*, No. 17-CV-87-LRR, 2018 WL 2424142, at *8 (N.D. Iowa May 10, 2018) (finding the record was sufficient when the ALJ relied on evidence developed after the state agency doctors opined there was not enough evidence); *Williams*, 2017 WL 3503327, at *8 ("The ALJ's reliance on the state agency consultants' opinions provided substantial evidence for the ALJ's RFC assessment."). The ALJ did not err by not ordering another consultative examination after giving Owens' opinion only limited weight. Castillo's objection on this point is overruled.

### 3. *Daily activities*

Finally, Castillo argues that none of her alleged daily activities show she is capable of lifting 50 pounds and, therefore, her daily activities do not support the RFC limitations. Doc. No. 19 at 4. The RFC is based on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Hensley*, 829 at 932 (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)). The RFC is the most the claimant can do despite the claimant's limitations. 20 C.F.R. § 404.1545(a)(1). Courts defer to an ALJ's credibility findings regarding the claimant's own description of her limitations if the ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so." *Id.* at 934 (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)). A claimant's daily activities can support the ALJ's RFC finding and can support a finding that the claimant is not credible. *Id.*; *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking,

are inconsistent with subjective complaints of disabling pain."). Evidence of daily living activities can support an ability to work on a daily basis in the national economy. *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000).

Castillo indicated that she takes the dogs out, does dishes and walks up and down stairs a lot. AR 173. A third party indicated that she helps him with daily activities,[9] does laundry and mows the lawn. AR 176. At the disability hearing, Castillo indicated that she cooks, helps around the house, plays with her grandchildren, goes to their school functions, goes shopping even though it takes longer to do so, and can take care of her personal needs. AR 40–48. The ALJ noted that her alleged daily activities do not, themselves, "indicate an ability to perform full-time work, but [they] definitely suggest that the claimant has the ability to perform work within the parameters of the above residual functional capacity." AR 17. Even when daily living activities alone would not show an ability to work, they may be considered along with other evidence when evaluating the claimant's credibility. The ALJ based his credibility and RFC finding not only on Castillo's daily activities, but also on the rest of her medical record. *See* AR 17–18.

If substantial evidence supports the Commissioner's conclusions, a court should not "reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). I find that there is substantial evidence on the record as a whole to support the ALJ's RFC determination. The ALJ conducted an independent review of the medical evidence, which I detailed above, gave significant weight to the opinions of the

---

[9] The ALJ stated that Castillo helps her boyfriend with "strenuous things." AR 17. Her boyfriend, Michael Jensen, wrote in the third-party questionnaire that "im [sic] limited to strenuous things and lifting laundry baskets." AR 175. It is not clear if he meant that he cannot do strenuous things and so Castillo helps him, or that she only helps him when he does strenuous things. What is clear that she helps him with activities that may be strenuous.

state agency doctors and considered Castillo's daily activities in relation to the rest of the record. Castillo's objection on this point is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Castillo's objections (Doc. No. 19) to the Report and Recommendation (Doc. No. 18) are **overruled**.

2. I **accept** the Report and Recommendation (Doc. No. 18) without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Mahoney's recommendation:

   a. The Commissioner's determination that Castillo was not disabled is **affirmed**; and

   b. Judgment shall enter against Castillo and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 14th day of February, 2019.

_____
Leonard T. Strand, Chief Judge